## . CHARLESTON.

STATE *ex rel.* MOTOR FINANCE CORP. *v.* NAAMAN JACKSON, *Commisioner of Banking.*

Submitted January 9, 1924.   Decided January 15, 1924.

1. CONSTITUTIONAL LAW—*When Constitutionality of Statute Raised Stated; Invalidity of Statute Must be Raised by the Pleadings.*

The constitutionality of a statute is raised when its validity is denied on one side and asserted on the other, one claiming that his rights will be infringed upon if the purposes contemplated by such statute are carried out, and the other claiming the right to carry out the purposes contemplated thereby; but the alleged unconstitutionality of a statute will not be considered where no right is claimed because of its invalidity and no injury alleged as resulting from its application.   The invalidity of a statute to be relied upon must be raised by the pleadings.   (p. 365).

2. BANKS AND BANKING—*When Commissioner of Banking May Refuse Mutual Investment Association or Mortgage Company Certificate of Authority to do Business Stated.*

In order that the commissioner of banking may refuse a mutual investment association, mortgage company, mortgage discount company or any company of like kind or character a certificate of authority to do business in this state under sec. 78-A-6, chap. 54, Code, as amended by chapter 31, Acts 1923, it must appear that the provisions of the charter, constitution and by-laws of such company are impracticable, unjust, inequitable, oppressive or lacking in security to any class of its shareholders or stockholders.   (p. 368).

3. SAME—*Mutual Investment Associations and Kindred Corporations May Provide in Charter for Issuance of Non-Par Stock.*

Mutual investment associations, mortage companies, mortgage and discount companies and corporations of like kind and character are not prohibited by sec. 15, chap. 53, Code, from incorporating in their charters provisions for the issuance of non-par stock.   (p. 369).

4. SAME—*Commissioner of Banking Cannot Refuse Permit of Mutual Investment Associations or Kindred Corporations to do Business Because Charter Authorizes Issuance of Non-Par Stock.*

When such corporation applies to the commissioner of banking for a permit to begin business, as required by sec. 78-A-6,

chap. 54, Code, as amended by chap. 31, Acts 1923, he cannot refuse such permit simply because such corporation is authorized by its charter to issue non-par stock. The right to issue such non-par stock, accorded by law, does not, *ipso facto*, render the provisions of the charter and the constitution and by-laws of the company thereunder impracticable, unjust, inequitable, oppressive or lacking in security to any class of its shareholders or stockholders. (p. 371).

Original petition by the State, on the relation of the Motor Finance Corporation, against Naaman Jackson, as Commissioner of Banking, for mandamus to compel respondent to issue a certificate of authority permitting relator to begin business.

*Writ awarded.*

*Hubbard & Hubbard,* for relator.

*E. T. England,* Attorney General, and *Chas. Ritchie,* Assistant Attorney General, for respondent.

LIVELY, JUDGE:

Relator, a West Virginia corporation, presented its charter and by-laws to the commissioner of banking and asked for a certificate of authority to begin business, as required by sec. 78-A-6, chap. 54, Code, as amended by chap. 31, Acts 1923. The commissioner refused, and upon relator's petition this alternative writ was awarded against him. The proceeding is a friendly one designed to determine judicially whether the commissioner should exercise supervision and control over corporations whose charters authorize the issuance of non par stock. Relator is what might be termed a "mortgage and discount company," its principal purpose being to purchase and discount notes given for motor cars. Its capital stock is divided into two classes, namely, preferred stock of the par value of $100 per share; and non par stock. The petition sets out the title to the act, chap. 31, Acts 1923, which amends secs. 78-A-5, 78-A-6, 78-A-7 and 78-A-8, of chap. 54, "relating to savings banks, banking associations, trust companies and building and loan associations and providing for supervision and examination by the state banking commissioner." It

is not clear for what purpose the title to this act is pleaded. The brief for relator contains argument to the effect that the amending act of 1923, the title to which is above quoted, is unconstitutional because the title is not broad enough to include relator company within its purview. The pleadings do not raise this constitutional question. The petition does not and could not do so for it asks mandamus to compel the issuance of a certificate of authority under that act. To aver that the act is unconstitutional would be to admit that the petition should be refused, and the writ dismissed. One who asks for a license under an act or receives benefits thereunder is estopped from denying its validity. *Young* v. *City of Colorado*, 174 S. W. 986; *Musco* v. *United Surety Co.*, 196 N. Y. 459; *Pierce* v. *Somerset Ry.*, 171 U. S. 641, 19 Sup. Ct. 64, 43 L. Ed. 316. The return does not raise the question of the constitutionality of the statute. The refusal was not based on that ground. Both parties by their pleadings proceed upon the theory of the constitutionality of the statute, one seeking a permit thereunder and the other refusing its issuance upon statutory grounds. "A constitutional question is raised when the constitutionality of a statute is denied on the one side and asserted on the other, the one claiming that his rights will be infringed on if the purposes contemplated by such statute are carried out, and the other claiming the right to carry out the purposes contemplated thereby. But no question as to the constitutionality of a statute will be considered where no right is claimed on the basis of its invalidity, and no injury is alleged as resulting from its application." 12 C. J. p. 784. If it be sought to raise the question of the constitutionality of the statute, it should be specifically set up in the pleadings; raised either by petition, return or demurrer. Even where a constitutional question is raised by the pleadings the courts are tender about passing upon it, out of respect of the legislature, if it be not absolutely necessary to a decision of the case. *Edgell* v. *Connaway*, 24 W. Va. 747; *Rutter* v. *Sullivan*, 25 W. Va. 427; *Sheppard* v. *Wheeling*, 30 W. Va. 479. And surely the courts will not be quick to consider such questions where they are sought to be raised indirectly and by inference.

The return admits the issuance of the charter, the organization of the company and presentation of the same with its by-laws and a request for the issuance of the certificate and the declination to issue that certificate. The reason for refusal assigned is that relator is not such a corporation as is authorized to receive a charter permitting the issuance of non par stock under section 15 of chapter 53 of the Code, because chapter 31 of the Acts of 1923 placed the relator and like corporations under the supervision of the banking commissioner, and therefore that relator must be of like kind and character to savings banks, banking associations, trust companies and building and loan associations in order to come under respondent's supervision; that banking and trust companies and building and loan associations can not have non par value stock; and that although the applicant should be entitled to receive a charter authorizing the issuance of non par stock "such provision as to companies placed under the supervision of your respondent would be impracticable in that no definite measure of financial responsibility is afforded respondent whereby he can determine the available assets of a company issuing non par stock, as is evidenced by a company issuing stock having no fixed par value;" that under respondent's discretionary power to determine whether the provisions of the charter or by-laws of any such corporation is impracticable, unjust, inequitable, oppressive or lacking in security, he reached the conclusion that relator company by reason of its authority to issue non par stock should be refused a certificate of authority to begin business.

The refusal of the commissioner to grant the permit to begin business is based primarily upon the provision of applicant's charter authorizing it to issue non par stock: (1) because the commissioner deems applicant to be, in contemplation of the constitution and laws, of the same kind and class as savings banks, co-operative banking associations, trust companies, building and loan associations, railroad and internal improvement companies, insurance and title companies, fidelity, surety and guaranty companies, which are prohibited from issuing non par stock under sec. 15, chap. 53, Code; (2) because by examination of the charter and

by-laws of applicant he can not say that they provide a safe, just, and equitable plan for the management of its business, in that it is impracticable for him to measure and determine its available assets *from the fact that it has the right to issue non par stock.*

Do these reasons justify refusal of permit to begin business? We will consider them.

(1)   It is apparent that relator is not of the same kind and character as banking institutions, building and loan companies and the like which are prohibited by the·statute from issuing non par stock.   The fact that they are placed in section 78-A-6, chapter 54, (the section in which the other named corporations are found), for the issuance of permits, does not, *ipso facto,* make them like institutions.   The purpose of the amending act of 1923, was to place mortgage companies, mortgage and discount companies, mutual investment associations and corporations of like kind and character, under state supervision, visitation and control, excepting, however, licensed stock brokerage companies.   The kind and character of the institutions are not changed by naming them in the same section any more than if they had been segregated and each placed in different sections.   Banks and building and loan associations are essentially different from each other in all material respects, and their essential differences are not obviated or changed because they are placed together under supervisory control in the same section of the act.   It is argued that the commissioner must give such construction in order to validate the statute, because of the title thereto which only amends the sections of chapter 54 "relating to savings banks, banking associations, trust companies and· building and loan associations."   The argument is that to ·hold these named corporations as being essentially different, would make the act unconstitutional as to relator company. We do not think that. necessarily follows.   That is a judicial question not presented by the pleadings and not necessary to decide.   The commissioner does not base his refusal on the defect, if any there be, in the title to the act.   He does not rest on the unconstitutionality, if there be such, in the statute.

He relies upon the statute as a valid one, and his reasons for doing so are unimportant.

(2)ᵃ The substance of the second ground of refusal is that it is impracticable for the commissioner to measure and determine the available assets of a corporation which issues non par stock, and therefore he does not have ready facilities for determining its available assets and financial condition. He says he has discretion to refuse, for this reason, and not because the charter and by-laws do not provide a safe, just and equitable plan for the management of the business. Counsel relies upon *State ex rel. Dodd* v. *Hill*, 84 W. Va. 468, to justify this position. The statute designates the ground for refusal of the certificate of authority to begin business. If the charter and by-laws be impracticable, unjust, inequitable or oppressive or lacking in security to any class of stockholders or shareholders the permit may be refused. His discretion goes no further. The refusal is not based on that ground. Nothing is pointed out which would be unjust, inequitable, oppressive or lacking in security to any class of stockholders. The impracticability on which respondent relies as giving him discretion to refuse, is that which relates to his own convenience in future examination. The return is: ''Such provision (for non par stock) as to companies placed under the supervision of your respondent would be impracticable in that no definite measure of financial responsibility is afforded respondent whereby he can determine the available assets of a company issuing non par stock as is evidenced by a company issuing stock having a fixed par value.'' The impracticability here pleaded is not to the conduct and success of the business, but relates to the difficulty, actual or imaginative, in making an examination of its financial standing when beginning, or after it is in operation. The impracticability of examination is quite different from that contemplated by the statute. The plan of management as safe, just and equitable is not criticised; nothing urged against it. The plan of issuing non par stock in corporate organization and management is well recognized and approved in the business world. It is enough to say that our laws authorize it in companies of this character. It is not with us to criti-

cize the legislative policy. Nor can we perceive wherein that feature renders the success of a corporation more uncertain than those which issue par value stock wholly; nor wherein it is unjust, inequitable, oppressive or lacking in security to any class of shareholders. The stock of a corporation is always dependent for value upon its assets, and is constantly fluctuating accordingly.

In *Dodd* v. *Hill,* above cited, the statute did not set out the grounds upon which the commissioner was authorized to refuse an application for permit to begin a banking business. It said: "hereafter no charter shall be issued to any bank to do business in the state until the application therefor has been approved in writing by the commissioner of banking." It was contended that the power of the commissioner to refuse was limited to the formal sufficiency of the papers presented for examination and approval, prior to the issuance of the charter by the secretary of state. The court did not so restrict the act. It said that the chief purpose of the banking law was to make the business safe for those who invested and entrusted their money therein; and that under the board terms of the statute, the commissioner was authorized to take into consideration the questions connected with the location of the bank, whether it would be a proper location from a banking standpoint, and from the standpoint of the public, and whether such bank would be of any value to the stockholders or the people of that community. It is elementary that where an officer is clothed with discretion the courts will not control by mandamus unless he has arbitrarily or unreasonably exercised it. *Dillon* v. *Bare,* 60 W. Va. 483. It would be readily conceded that if respondent refused permit on the ground that the papers presented to him, in his judgment, did not provide a safe, just and equitable plan for the management of the business; on the contrary, that the provisions were impracticable, unjust, inequitable, oppressive or lacking in security to any class of stockholders, then his discretion to refuse would be upheld unless clearly arbitrary, flagrantly wrong, and bringing about unjust results. The statute authorizes the issuance of non par stock to this kind of corporations, and it cannot be said that the authority so given is inherently unjust or oppressive to any stockholder. The

law speaks to the contrary. As we interpret the return, the refusal is predicated upon the non par stock feature of the charter, because such feature makes it impracticable for the commissioner to ascertain with facility the financial responsibility and available assets of relator, and for that reason alone he has exercised discretion to refuse. The return is insufficient. The suggestion in the brief of respondent's counsel that the office force of respondent is hardly sufficient to properly supervise banks and other institutions now under his supervision and to take on others would render it impossible with his present force to properly supervise all of them, has no bearing upon the question of law involved. The legislature may or may not obviate that difficulty.

The demurrer to the return will be sustained; and the writ awarded.

*Writ awarded.*